UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID D. AUSTIN,
        Petitioner,

v.                                                                              Case No. 15-C-272

JUDY P. SMITH,
        Respondent.

## ORDER

After a jury trial in Winnebago County Circuit Court, David D. Austin was convicted of one count of first-degree sexual assault of a child in violation of Wis. Stat. § 948.02(1) for the molestation of JFF, the nine-year-old daughter of his girlfriend, Lee Foulkes. Austin filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 on March 9, 2015. After significant delay, the petition is now fully briefed. Because each claim for relief raised in the petition is procedurally defaulted, and Austin cannot demonstrate cause for and prejudice stemming from the defaults or his actual innocence, I must deny his petition.

I.    BACKGROUND

    A. JFF's Accusation

Austin moved in with Foulkes and her two daughters, including JFF, after being evicted from his residence in Milwaukee. About a month later, Foulkes left JFF alone with Austin. Foulkes returned home and became suspicious because both JFF and Austin had showered. She asked JFF if anything had happened between her and Austin, and JFF denied any impropriety.

A few days later, JFF told her mother that something had, in fact, happened. She stated that Austin had made her touch his penis. Foulkes confronted Austin, who denied the accusation. When JFF was asked to explain further, she said she had lied.

Foulkes decided to take JFF to counseling. At one of the counseling sessions with Debra Conway, JFF denied that Austin had touched her. Foulkes eventually told Perry Sharpe, her former boyfriend, and a father figure to JFF, about the accusation. Sharpe reported the incident to the police.

As part of the investigation, Detective April Hinke spoke with JFF in her police car. JFF initially denied that anything had occurred but then admitted that Austin had touched her. Hinke took JFF to the police station and recorded an interview with her. In that interview, JFF stated that Austin had been lying on the couch when he told her to join him for "you and me time." She laid down beside him, and he asked if she had any questions about sex. He then grabbed her hand and placed it on his penis. She pulled her hand away after a few seconds. Austin then touched her vagina with his fingers. The touching stopped after a few seconds when JFF told Austin she needed to take a shower. When asked why she had told her mother that she lied about the accusation, JFF stated that she "felt freaked." She also stated that she initially denied the accusations to Hinke because she was scared. Days later, Rod Schraufnagel, a child protective service worker, recorded another interview with JFF in which she provided a similar account of the incident.

## B. Pretrial Proceedings

Austin was arrested in June 2007 and charged with one count of first-degree sexual assault of a child in violation of Wis. Stat. § 948.02(1). At a pretrial hearing, Austin's

attorney, James J. Skyberg, moved to dismiss the case, arguing that Austin was arrested without a warrant in violation of the Fourth Amendment. The circuit court denied the motion, holding that an illegal arrest does not affect the court's jurisdiction to hear a criminal case. At the same hearing, the state moved to exclude two of Austin's expert witnesses, Dr. Christopher Tyre and Dr. Robert Barahal. The state argued that Attorney Skyberg had not provided the prosecution with adequate summaries of the experts' opinions as required by Wis. Stat. § 971.23(2m). The circuit court agreed and excluded Dr. Tyre and Dr. Barahal as expert witnesses.

### C. Trial and Conviction

The state's theory was that JFF was a credible victim whose denials and recantations were the product of fear. JFF's testimony was consistent with the account provided in her recorded interviews. In addition to JFF's in-court testimony, the jury also watched the two recorded interviews and heard from Hinke and Schraufnagel. The state's final witness was Stephanie Hueseman, an expert who testified about the phenomenon of delayed sexual abuse reporting and victim recantations.

Austin's theory was that JFF was lying about the incident. On cross examination, Jasmine admitted that she had denied that Austin touched her to Foulkes on the night of the incident, to Sharpe, and to Conway during a counseling session. She also admitted that she was not always truthful with her mother. On direct examination, both Foulkes and Sharpe also testified that JFF was not always truthful to them. Austin testified on his own behalf and flatly denied JFF's version of events. He also testified that JFF was sent to her room on several occasions for lying.

3

Austin also tried to discredit the interviews conducted by Hinke and Schraufnagel as suggestive. He sought to call James Dillon as an expert who would testify about "problems that exist in interviewing children and in particular the problematic process undertaken in this particular case." However, Attorney Skyberg had not provided an adequate summary of Dillon's findings to the prosecution as required by Wis. Stat. § 971.23(2m), so the circuit court excluded Dillon from testifying as an expert witness. Instead, because he had interviewed Foulkes and Sharpe, Austin was permitted to use Dillon as an impeachment witness.

The jury returned a guilty verdict on August 9, 2007. Austin received a 20-year sentence comprised of a 10-year term of confinement followed by a 10-year term of extended supervision. He was placed on extended supervision on June 7, 2016, but was later revoked on June 28, 2018. ECF No. 65 at 2. Austin is currently confined at Dodge Correctional Institution. ECF No. 55.

### D. Direct Appeal and Postconviction Relief

Austin's postconviction history is extensive. He pursued a direct appeal or other postconviction relief in state court seven times. *See State v. Austin*, 2008-AP-2894; *Austin v. Pugh*, 2010-AP-1183; *State v. Austin*, 2011-AP-511; *Austin v. State*, 2011-AP-1580; *State v. Austin*, 2012-AP-2668; *Austin v. Smith*, 2013-AP-2751; *Austin v. Smith*, 2014-AP-992. Only four of those pursuits are particularly relevant for his current habeas petition.

#### 1. State v. Austin, 2008-AP-2894

Austin, represented by Catherine M. Canright, filed a motion for postconviction relief in Winnebago County Circuit Court. ECF No. 32-11 at 67. He claimed that Attorney

4

Skyberg was ineffective for failing to comply with Wis. Stat. § 971.23(2m) and causing the exclusion of Dillon, Dr. Tyre, and Dr. Barahal. *Id.* After receiving the district attorney's response brief and interviewing the expert witnesses, Attorney Canright concluded that she could not demonstrate prejudice as required under *Strickland*. ECF No. 32-13 at 28–29. She informed the circuit court that denial of the ineffective assistance of counsel claim was appropriate, and the circuit court denied the motion accordingly. *Id.* at 29–30.

Austin, still represented by Attorney Canright, appealed. *See* ECF No. 32-2. He raised two issues: (1) whether the circuit court erred in excluding James Dillon's expert testimony; (2) whether there was sufficient evidence to convict. *Id.* at 4. He did not raise the ineffective assistance of counsel claim. *See id.* The Wisconsin Court of Appeals affirmed Austin's conviction, ECF No. 32-5, and the Wisconsin Supreme Court denied his petition for review. ECF No. 32-8.

### 2. Austin v. Pugh, 2010-AP-1183

Austin, proceeding pro se, next filed a petition for a writ of habeas corpus in the Wisconsin Court of Appeals. ECF No. 32-9. He claimed that Attorney Skyberg was ineffective because he (1) failed to comply with the expert witness discovery statute, (2) did not object to the prosecution's discovery violations, and (3) "did not contest a number of constitutional violations that had taken place." *Id.* at 20–21. He also claimed that Attorney Canright was ineffective for failing to preserve and present certain issues, including "1) Illegal arrest 2) Illegal search and seizure 3) Illegal bond and detention 4) Witness tam[p]erring by the A.D.A. 5) Jury tampering 6) Illegal court procedure 7) Ineffective counsel." *See* ECF No. 32-10 at 4; *see also* ECF No. 32-9 at 30.

The court of appeals did not decide the merits of the ineffective assistance of trial counsel or postconviction counsel claims because it held that the circuit court was the appropriate forum for such claims. ECF No. 32-10 at 3–4. With respect to the ineffective assistance of appellate counsel claim, the court of appeals denied Austin's petition because it "fail[ed] to allege sufficient facts to permit th[e] court to meaningfully review his request for relief," as required by *State v. Allen*, 682 N.W.2d 433 (Wis. 2004). *Id.* at 5. The Wisconsin Supreme Court then denied Austin's petition for review. ECF No. 32-15.

### 3. State v. Austin, 2012-AP-2668

Austin, again proceeding pro se, filed a motion for postconviction relief under Wis. Stat. § 974.06 in Winnebago County Circuit Court. *See* ECF No. 74-1. According to his appellate brief, Austin raised numerous claims for relief. *See id.* at 16–19. He claimed that Attorney Skyberg was ineffective because he (1) "violated discovery twice, causing me not to have expert testimony at trial," (2) "failed to provide the court with the necessary information that would have allowed John Wallace III to testify," (3) "failed to move the court for a mistrial after [two] biased jurors were allowed to remain empaneled," (4) "refused to challenge jurisdiction and offered the court a half-hearted presentation when presenting illegal arrest to the court," (5) "failed to notify the court of the State's discovery violation," (6) "failed to utilize the letters written by Lee [Foulkes]," and (7) "did not file a motion for discovery in this case after he was appointed as counsel." *Id.* at 17–18. He claimed that Attorney Canright provided ineffective postconviction representation by informing the circuit court that she did not have sufficient evidence to support an ineffective assistance of trial counsel claim and that denial of the claim was appropriate. *Id.* at 16. He also claimed a speedy trial violation, an impartial jury violation, a Fourth

6

Amendment violation, prosecutorial misconduct,[1] and trial court abuse of discretion. *Id.* at 16–19.

The circuit court summarily denied the motion. *Id.* at 26. Austin appealed, and the Wisconsin Court of Appeals affirmed. ECF Nos. 74-3, 74-4. The court of appeals held that Austin's claims were procedurally barred under *State v. Escalona-Naranjo*, 517 N.W.2d 157 (Wis. 1994) because he did not raise them in two previous pro se postconviction motions (i.e., *State v. Austin*, 2011-AP-511 and *Austin v. State*, 2011-AP-1580). ECF No. 74-4 at 3–4. The Wisconsin Supreme Court denied Austin's petition for review as untimely. ECF No. 74-8. It then denied Austin's motion for reconsideration. ECF No. 74-10.

### 4. Austin v. Smith, 2014-AP-992

Austin, again proceeding pro se, most recently filed a second petition for a writ of habeas corpus in the Wisconsin Court of Appeals. ECF No. 32-16. He claimed that Attorney Canright provided ineffective appellate representation by failing to present eleven issues: (1) ineffective assistance of postconviction counsel, (2) ineffective assistance of trial counsel, (3) "Illegal Search and Seizure," (4) "Excessive Pretrial Detention," (5) "Violation of Speedy Trial," (6) "Cruel and Unusual Punishment," (7) "Mistrial Due to Prosecutorial Misconduct," (8) "Tainted Jury," (9) "Abuse of Trial Court[']s Discretion," (10) "Mr. Austin was not sentenced on True and Accurate Information," and (11) "Trial Court Imposed an Unduly Harsh Sentence Without Legitimate Justification." *Id.* at 2. He also claimed that she deficiently argued the sufficiency of the evidence issue. *Id.*

---

[1] Based on Austin's federal habeas petition and brief, I understand that this claim refers to a *Brady* violation.

The court of appeals denied the petition because Austin had already filed a *Knight* petition, and he did not "adequately explain why all issues relating to the representation of appellate counsel were not raised in the first petition," as required by *State ex rel. Schmidt v. Cooke*, 509 N.W.2d 96 (Wis. Ct. App. 1993). ECF No. 32-17. The Wisconsin Supreme Court denied Austin's petition for review. ECF No. 32-20.

### E. Austin's Section 2254 Petition

Austin raises eight claims for relief in his Section 2254 habeas petition: (1) Fourth Amendment unreasonable seizure; (2) ineffective assistance of appellate counsel; (3) ineffective assistance of postconviction counsel; (4) ineffective assistance of trial counsel; (5) speedy trial violation; (6) *Brady* violation; (7) impartial jury violation; (8) trial court abuse of discretion.

## II. DISCUSSION

The respondent contends that I need not reach the merits of Austin's claims because they are procedurally defaulted. Austin concedes that "no State Court [has] adjudicated the merits of [his] case," ECF No. 108 at 31, but nonetheless argues that his claims are not defaulted. Alternatively, Austin contends that any procedural defaults are excused because he has demonstrated cause for and prejudice stemming from the default. He also contends that he has met his burden under the *Schlup* actual innocence gateway.

### A. Procedural Default

Federal habeas relief for a state prisoner is only available for exhausted claims. 28 U.S.C. § 2254(b)(1)(A). Exhaustion focuses on whether the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28

8

U.S.C. § 2254(c). Without more, a petitioner could technically exhaust federal claims by allowing all state remedies to expire without raising the claims in state court. But that would defeat the purpose of exhaustion, which "reflects a policy of federal-state comity, 'an accommodation of our federal system designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)). Consequently, the Supreme Court has developed the doctrine of procedural default, which precludes federal habeas relief on defaulted claims absent an excuse.

There are two types of procedural default. *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). The first is governed by the independent and adequate state ground rule. *Id.* When a petitioner fails to meet state procedural requirements for presenting a federal claim, and the state courts decline to address the claim because of the petitioner's failure, "the state court judgment rests on an independent and adequate state ground" and the claim is procedurally defaulted. *Id.* The second is governed by the fair presentment rule. *Id.* When a petitioner does not "fairly present a federal claim to each state in each appropriate state court (including a state supreme court with powers of discretionary review)," *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks omitted), and "the opportunity to raise that claim in state court has passed," *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004), the claim is also procedurally defaulted.

1. **Claims One, Five, Six, Seven, and Eight**

Austin most recently raised claims one, five, six, seven, and eight in his motion for postconviction relief in *State v. Austin*, 2012-AP-2668. The Wisconsin Court of Appeals held that the claims were barred under *State v. Escalona-Naranjo*, 517 N.W.2d 157 (Wis.

1994). The Wisconsin Supreme Court then denied Austin's petition for review as untimely under Wis. Stat. §§ 808.10 and 809.62 and later denied his motion for reconsideration. The supreme court's final decision thus rested on an independent and adequate state ground, and Austin procedurally defaulted claims one, five, six, seven, and eight. *See Buelow v. Dickey*, 847 F.2d 420, 425 (7th Cir. 1988).

### 2. Claim Two: Ineffective Assistance of Appellate Counsel

Austin claims that Attorney Canright provided ineffective appellate representation because she (1) "could not reasonably assert her own ineffectiveness as post-conviction counsel," (2) "knowingly abandon[ed] multiple issues of merit[2] without her client's knowledge or consent, only to present meritless issues in the direct appeal," (3) "did not do a reasonable investigation into the facts or evidence of the case," and (4) "failed to surrender a complete and accurate copy of the record in her possession in a blatant attempt to hide her misconduct." ECF No. 1 at 12–13. He most recently raised an ineffective assistance of appellate counsel claim in his second *Knight* petition in *Austin v. Smith*, 2014-AP-992. In that petition, he claimed that Attorney Canright provided ineffective appellate representation by failing to present eleven issues: (1) ineffective assistance of postconviction counsel, (2) ineffective assistance of trial counsel, (3) "Illegal Search and Seizure," (4) "Excessive Pretrial Detention," (5) "Violation of Speedy Trial," (6) "Cruel and Unusual Punishment," (7) "Mistrial Due to Prosecutorial Misconduct," (8)

---

[2] In his supporting brief, Austin directs me to his second *Knight* petition for arguments on the merits of his ineffective assistance of appellate counsel claim. ECF No. 108 at 74. Therefore, the only "issues of merit" that are relevant for this analysis are those raised in that second *Knight* petition. To the extent Austin also intended to raise ineffective assistance claims that he only raised in his first *Knight* petition, those claims are also procedurally barred under the independent and adequate state ground rule. *See Lee v. Foster*, 750 F.3d 687, 694 (7th Cir. 2014) (holding that *State v. Allen*, 682 N.W.2d 433 (Wis. 2004) is an independent and adequate state ground).

"Tainted Jury," (9) "Abuse of Trial Court[']s Discretion," (10) "Mr. Austin was not sentenced on True and Accurate Information," and (11) "Trial Court Imposed an Unduly Harsh Sentence Without Legitimate Justification." He also claimed that her presentation of the sufficiency of the evidence issue was deficient.

The Wisconsin Court of Appeals denied Austin's second *Knight* petition as barred under *State ex rel. Schmidt v. Cooke*, 509 N.W.2d 96 (Wis. Ct. App. 1993). In *Schmidt*, the Wisconsin Court of Appeals adopted the following rule: "[A] defendant may file only one habeas petition under *Knight* unless that defendant can adequately explain why all issues relating to the representation of appellate counsel were not raised in the first petition." *Schmidt*, 509 N.W.2d at 97. That rule is the *Knight* petition analogue to the *Escalona-Naranjo* procedural bar for Wis. Stat. § 974.06 motions. *See State v. Evans*, 682 N.W.2d 784, 796 (Wis. 2004), *abrogated on other grounds by State ex rel. Coleman v. McCaughtry*, 714 N.W.2d 900 (Wis. 2006); *see also State ex rel. Washington v. State*, 819 N.W.2d 305, 314 (Wis. Ct. App. 2012) ("It has long been held in Wisconsin that successive attempts at postconviction relief will not be tolerated in the absence of extraordinary circumstances."). Therefore, the court of appeals' decision rested on an independent and adequate state ground, and Austin procedurally defaulted his claim that Attorney Canright was ineffective for failing to present issues of merit.

Austin also procedurally defaulted the remaining three ineffective assistance of appellate counsel claims under the fair presentment rule. He has not raised those claims in the state courts, and it is clear that the opportunity to do so has passed. *See Schmidt*, 509 N.W.2d at 97.

### 3. Claim Three: Ineffective Assistance of Postconviction Counsel

Austin claims that Attorney Canright provided ineffective postconviction representation because she (1) "requested the trial court to deny the postconviction motion," (2) "kn[e]w of 'other issues' which had merit but refused to present them to the trial court," and (3) intentionally ignored the State ethics rules that govern attorney-client relations." ECF No. 1 at 13–14. He most recently raised an ineffective assistance of postconviction counsel claim in his motion for postconviction relief in *State v. Austin*, 2012-AP-2668. In that motion, he claimed that Attorney Canright provided ineffective postconviction representation by informing the circuit court that she did not have sufficient evidence to support an ineffective assistance of trial counsel claim and that denial of the postconviction motion was appropriate.

As explained above, the Wisconsin Supreme Court's decision to deny Austin's petition for review as untimely means Austin procedurally defaulted his claim that Attorney Canright was ineffective for requesting that the circuit court deny his postconviction motion. Austin also procedurally defaulted the other two ineffective assistance of postconviction counsel claims under the fair presentment rule. He has not raised those claims in the state courts, and that opportunity has passed. *See Escalona-Naranjo*, 517 N.W.2d at 162–64.

### 4. Claim Four: Ineffective Assistance of Trial Counsel

Austin claims that Attorney Skyberg provided ineffective trial representation because he failed to (1) "comply with . . . the discovery statute, which resulted in the exclusion of all expert witnesses that could have rebutted the State's expert witnesses," (2) "notify the court that he had knowledge that the State prosecutor had intentionally withheld exculpatory evidence," (3) "present to the jury evidence he had in his control that

12

Case 2:15-cv-00272-LA   Filed 04/28/22   Page 12 of 18   Document 121

would have support Mr. Austin's innocence," (4) "do a reasonable investigation into the case," (5) "rais[e] a blatant 4th Amendment illegal search [and] seizure issue that would have promptly ended the case," and (6) "seek [an] interlocutory appeal when he kn[e]w that his client was being excessively detained in the pre-trial phase and the county was applying bond terms that was cruel and unusual in their application." ECF No. 1 at 14–15. He most recently raised an ineffective assistance of trial counsel claim in his motion for postconviction relief in *State v. Austin*, 2012-AP-2668. In that motion, he claimed that Attorney Skyberg was ineffective because he (1) "violated discovery twice, causing me not to have expert testimony at trial," (2) "failed to provide the court with the necessary information that would have allowed John Wallace III to testify," (3) "failed to move the court for a mistrial after [two] biased jurors were allowed to remain empaneled," (4) "refused to challenge jurisdiction and offered the court a half-hearted presentation when presenting illegal arrest to the court," (5) "failed to notify the court of the State's discovery violation," (6) "failed to utilize the letters written by Lee [Foulkes]," and (7) "did not file a motion for discovery in this case after he was appointed as counsel."

Here, again, the Wisconsin Supreme Court's decision to deny Austin's petition for review as untimely means Austin procedurally defaulted his claims that Attorney Skyberg was ineffective for failing to comply with the expert witness discovery statute, object to a *Brady* violation, and adequately argue the Fourth Amendment issue. Likewise, the remaining ineffective assistance of trial counsel claims are procedurally defaulted under the fair presentment rule. *See Escalona-Naranjo*, 517 N.W.2d at 162–64.

**B. Excuse**

A procedural default can be excused if "the petitioner can demonstrate both cause for and prejudice stemming from that default, or he can establish that the denial of relief will result in a miscarriage of justice." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (citations omitted). To demonstrate cause for a default, the petitioner must demonstrate "that some type of external impediment prevented [him] from presenting his federal claim to the state courts." *Id.* The petitioner is prejudiced if "the violation of [his] federal rights 'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170) (1982)) (emphasis in original).

The miscarriage of justice exception "applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013). To make that showing, the petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). I "'must consider all the evidence, old and new, incriminating and exculpatory' and then 'make a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Coleman v. Lemke*, 739 F.3d 342, 349 (7th Cir. 2014) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). The default is excused only if "it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence." *Schlup,* 513 U.S. at 327.

1. **Cause and Prejudice**

14

Austin contends that the deficient performance of his trial, postconviction, and appellate attorneys caused his defaults. While "[a] meritorious claim of attorney ineffectiveness might amount to cause for the failure to present an issue to a state court," that claim "must itself have been fairly presented to the state courts before it can establish cause for a procedural default of another claim." *Sternes*, 390 F.3d at 1026. Austin, proceeding pro se, procedurally defaulted his ineffective assistance of trial, postconviction, and appellate counsel claims. Consequently, the alleged ineffectiveness of Attorney Skyberg and Attorney Canright cannot supply cause for the defaults. Because Austin does not identify any other external impediments that prevented him from presenting his federal claims in state court, he cannot excuse his defaults under the cause and prejudice standard.

### 2. Actual Innocence

In support of his assertion of actual innocence, Austin identifies six categories of allegedly new evidence: (1) audio recordings of phone calls between Austin and Foulkes, (2) letters written by Foulkes, (3) an Oshkosh police department report from an unrelated incident, (4) an investigative report by Sue Dedering, (5) a supplemental timeline written by Austin, and (6) video transcripts of the Hinke and Schraufnagel interviews.

To start, much of this material is not "new reliable evidence . . . that was not presented to the jury." *Schlup*, 513 U.S. at 324. Take the letters written by Foulkes. Austin contends that the jury never heard from Foulkes that Hinke interviewed JFF for two hours, not the one hour to which Hinke testified, or that Foulkes was being threatened with the loss of her kids during the investigation into JFF's accusation. However, Foulkes testified to both facts on direct examination. ECF No. 32-25 at 117:20–21, 118:20–22. Then there

15

is the Dedering report. Austin contends that the jury never learned that he had an injury on his penis on the day of the incident, a fact contained in the report. However, Austin testified about that injury on direct examination. ECF No. 32-26 at 82:14–21, 86:1–6. Next there is Austin's supplemental timeline. That document is a handwritten timeline of events that Austin apparently provided Attorney Skyberg to guide his direct examination. To the extent it contains facts that were not drawn out on direct examination, the document alone does not establish them, and Austin does not submit an affidavit identifying the new facts to which he would testify. The timeline is simply not the type of new reliable evidence imagined by *Schlup*. Finally, the Hinke and Schraufnagel interviews were already presented to the jury. Austin cannot reduce the contents of those interviews to written form and call the transcripts new evidence. *See Gomez v. Jaimet*, 350 F.3d 673, 680 (7th Cir. 2003) ("We agree with the Eighth Circuit that merely putting a different spin on evidence that was presented to the jury does not satisfy the *Schlup* requirements.").

The remaining evidence is not enough to meet the demanding actual innocence standard. At most, the letters, audio recordings,[3] and police report supply impeachment evidence of various witnesses. For example, Lee Foulkes testified that after the recorded interview with Hinke, JFF told Foulkes that she had not lied to the officer. ECF No. 32-25 at 118:11–13. However, in one of the letters allegedly written by Foulkes, the author

---

[3] The CD at ECF No. 51 contains 14 files of recorded phone calls. Austin contends that the Winnebago County District Attorney's office failed to turn over and, in fact, destroyed other recordings. The respondent denies that any records were destroyed and contends that the district attorney's office provided Austin all recordings in its possession. This presents a predicament because Austin seeks to use the allegedly destroyed recordings to support his claim of actual innocence. Austin did submit an affidavit attesting to the contents of the destroyed phone calls in a prior discovery motion. *See* ECF No. 59. However, much of what Austin attempts to establish with that affidavit (e.g., Foulkes said JFF spent 20 minutes in Hinke's police car) is contained in the letters from Foulkes, the Dedering report, or the intact audio recordings. Therefore, even considering that affidavit, I cannot say that Austin has met the *Schlup* standard.

16

writes, "After picking [JFF] up, [JFF] is all happy and say that 'MOM, she make me say it and she make me lied.'" ECF No. 108 at 112. The same letter states that Hinke interviewed JFF in her police car for 15 to 20 minutes, *id.* at 109, whereas Hinke testified that the in-car interview lasted two minutes. ECF No. 32-25 at 194:7–9. In addition, both JFF and Foulkes testified about violence when Austin was in their home, *see, e.g.*, ECF Nos. 32-24 at 95:3–11, 32-25 at 129:8–19, but the Oshkosh police report categorizes one particular unrelated incident between Austin and Foulkes as "non-violent domestic." ECF No. 32-16 at 94. Finally, the audio recordings of the phone calls offer similar types of impeachment material, such as whether Foulkes forced JFF to address Austin a "dad."

However, the fact remains that JFF testified that Austin grabbed her hand, made her touch his penis, and then touched her vagina. Austin has not provided an affidavit by JFF recanting her testimony, and most of the new evidence relates to tangential facts and does not directly prove his theory of defense. The closest Austin gets to supporting his theory is the letter in which Foulkes says JFF admitted to lying to Hinke. However, Austin already put testimony on the record from which the jury could have inferred that JFF lied about her accusations. The jury considered that testimony and nonetheless voted to convict. The new evidence is not so strong that it would have altered that calculation. Therefore, I cannot say that the new impeachment evidence—considered alongside all the other evidence already on the record—makes it more likely than not that no reasonable jury would have convicted Austin. Austin cannot excuse his defaults by passing through the *Schlup* actual innocence gateway. Accordingly, all claims in Austin's petition are procedurally defaulted, and the petition must be denied and dismissed.

### III. CERTIFICATE OF APPEALABILITY

17

Case 2:15-cv-00272-LA    Filed 04/28/22    Page 17 of 18    Document 121

A petitioner may not appeal the dismissal of a habeas petition without a certificate of appealability (COA). 28 U.S.C. § 2253(c). For claims denied on procedural grounds, I should issue a COA if the petitioner demonstrates "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). I conclude that Austin cannot meet this standard. Therefore, I will deny Austin a certificate of appealability. He may nonetheless seek a certificate from the Seventh Circuit under Federal Rule of Appellate Procedure 22.

IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Austin's petition is **DENIED** and the case **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

Dated at Milwaukee, Wisconsin, on this 28th day of April, 2022.

/s/Lynn Adelman
LYNN ADELMAN
United States District Judge